**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| CONGREGATION JESHUAT ISRAEL, | |
| Plaintiff, | |
| v. | C.A. NO. 12-822-M (LDA) |
| CONGREGATION SHEARITH ISRAEL, | |
| Defendant. | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO**
**DEFENDANT'S POST-TRIAL MOTION FOR LEAVE TO AMEND**

Plaintiff Congregation Jeshuat Israel respectfully submits this memorandum in opposition to the post-trial motion of Defendant Congregation Shearith Israel, pursuant to Fed. R. Civ. P. 15(b), for leave to amend CSI's answer and counterclaims filed more than two-and-a-half years ago.

Now that the proof has closed and the trial is over, CSI seeks by this motion to undo the effect of several statements and representations which, because they are contained in CSI's pleadings, are binding judicial admissions. In three separate pleadings, CSI affirmatively pled – not "on information and belief," as CSI erroneously states, but without any qualification – that CJI's predecessor CYI was the original owner and possessor of the Rimonim at issue in this case. CSI by this motion also seeks to tone down the harsh relief it seeks in its counterclaims that highlight the need to replace CSI as trustee: CSI currently seeks an order (i) evicting CJI, the beneficiary of the trust that holds title to Touro Synagogue, and (ii) transferring the Rimonim, which CSI elsewhere says are "intertwined with Touro Synagogue" (CSI Br. 2-3), to CSI "forthwith."

On at least three independent grounds, the Court should deny CSI's belated motion to undo its admissions of fact. *First*, Fed. R. Civ. P. 15(b) allows amended pleadings only under narrow circumstances, "to conform [the pleadings] to the evidence and to raise an unpleaded issue" or to correct technical errors in a pleading. The issues of possession and ownership – the subject of the admissions that CSI seeks, post-trial, to retract – were not "unpleaded issue[s]." To the contrary, ownership and possession have been critical issues in this case from Day One. The Rule does not authorize a party to erase admissions of material fact once that party realizes at trial the import of those admissions. Here, CSI has let stand multiple statements in three separate pleadings for over two-and-a-half years. CSI is bound by these statements.

*Second*, under Local Rule 15, "Any motion to amend a pleading shall be made *promptly* after the party seeking to amend *first learns* the facts that form the basis for the proposed amendment." (LR cv 15 (emphasis added)). CSI has long known or should have known – from the very beginning of this case, when it filed its pleadings – "the facts that form the basis for the proposed amendment." Those purported facts come from documents that have been in CSI's files for 250 years. Even if, as CSI claims, CSI did not learn the supposed facts until CSI's expert Vivian Mann submitted her report, CSI waited another seven months before filing this motion. Seven months and post-trial, let alone two-and-a-half years, is not "promptly."

*Third*, CSI's proposed amendment is highly prejudicial to Jeshuat Israel. CJI has litigated this case for more than two-and-a-half years in reliance on Shearith Israel's repeated representations that CYI was the original owner and possessor of the Rimonim.

The Court should likewise deny CSI's thirteenth hour effort to alter the relief that CSI seeks. Although CSI claims that its amendments mitigate the nature of the relief it requests, in fact the proposed amendment is harsher than CSI's current pleading, not more lenient. In every

way, CSI continues to demonstrate that it is unfit to continue as trustee of the Touro Synagogue trust – a trust whose existence CSI continues to deny, but which the Attorney General has concluded was established by "the overwhelming record at trial." (Dkt. 95 at 7).

## I. BACKGROUND

### A. CSI's Three Pleadings Recognize that CYI was the Original Owner and Possessor of the Rimonim

In November and December 2012, CSI filed three separate pleadings – (i) a complaint in the action that CSI commenced against CJI in the Southern District of New York, (ii) an answer and counterclaim in this action, and (iii) CSI's amended answer and counterclaim. Beginning with CSI's complaint in New York, each of these three pleadings affirmatively stated the following, not limited by CSI's "information and belief" or any other qualification:

- "By 1822, Yeshuat Israel, original possessor of the Rimonim, ceased to exist."

- "After 1822, the Synagogue, cemetery, and ritual items of Yeshuat Israel, were left in the care of Stephen Gould, who took care of the property for several years. Thereafter ownership of the Synagogue and real and personal property including the Rimonim were conveyed to Shearith Israel."

- "During the operation of Touro Synagogue in the 18th Century, the Synagogue used Torah scrolls, including those loaned by Shearith Israel in New York. These scrolls were all presumably adorned with silver finial bells, or rimonim. Two pairs of rimonim possessed by Yeshuat Israel were crafted by the silversmith Myer Myers of New York."

(P239 at ¶¶ 17, 20, 21; P240 at Counterclaims ¶¶ 12, 15, 16; P241 at Counterclaims ¶¶ 12, 15, 16).  In other words, on nine separate occasions in its pleadings CSI affirmatively alleged without qualification that CYI was the original owner or possessor of the Rimonim.[1]

In its amended answer and counterclaims, CSI seeks to evict CJI from Touro Synagogue. Count V requests that "Jeshuat Israel should be removed as lessee of Touro Synagogue and related real property, and as lessee of all personal property, including all religious objects, owned by Shearith Israel."  (Amended Answer at 21, ¶ 63).  Count VI asks the Court to "declare Plaintiff to be in breach of the Indentures and Agreement with the United States and order the eviction of Plaintiff from the Touro Synagogue and related real property."  (*Id.* at 23, ¶ 5).

Finally, CSI's operative pleading requests the return of the Rimonim to New York. Shearith Israel declares that "The Rimonim should be returned forthwith to the possession of Defendant in New York or to such other place as Defendant determines absent an agreement between Shearith Israel and MFA on terms satisfactory to Shearith Israel."  (*Id.* at 19, ¶ 52). Shearith Israel repeats this request multiple times.  "Defendant is entitled to a preliminary and permanent injunction . . . directing the return of the Rimonim to Shearith Israel . . . ."  (*Id.* at 19, ¶ 57).  "Defendant demands judgment against Plaintiff as follows: . . . .That this Court order the immediate return of the Rimonim to the Congregation Shearith Israel in New York . . . ."  (*Id.* at 22, 23, ¶ 4).

B.  Dr. Mann's November 2014 report

CSI's affirmative statements in its pleadings that CYI was the original owner and possessor of the Rimonim accorded with the conclusion of every scholar who has ever addressed the issue over the past 60 years.  (*See* CJI Proposed Findings of Fact, ¶¶ 51-57).  The

---

[1] CSI also repeated some of these statements in the answer portion of its two Rhode Island pleadings on information and belief.  In the counterclaim section of those pleadings, however, CSI made the statements without qualification.

representations are also consistent with pre-litigation statements by CSI's long-time rabbi, Marc Angel (*id.* at ¶¶ 58-59), as well as Rabbi Angel's deposition testimony. (*Id.* at ¶ 64). The pleadings in this respect are also in sync with the deposition testimony of CSI's Rule 30(b)(6) witness on the subject of "ownership, use, possession, control" of the Rimonim, Zachary Edinger, who also serves as CSI's Ritual Director. (*Id.* at ¶ 63).

Notwithstanding this uniform consensus, on November 26, 2014 CSI submitted an expert report from Dr. Vivian Mann, stating that based on CSI's colonial-era ledger entries and board minutes, Myer Myers made the Rimonim for Shearith Israel, not CYI. (Mann Report at 5-6). Dr. Mann, CSI's paid expert, is apparently the first and only person ever to come to that conclusion.

CJI deposed Dr. Mann on December 31, 2014. There, she was confronted with CSI's pleading stating that CYI was the original owner and possessor of the Rimonim. At the time, Dr. Mann testified that she believed CSI's statements in the pleading were "erroneous." (June 10 (Mann) Trial Tr. 50-51).

C.   CSI's motion

In its pre-trial brief, Jeshuat Israel noted CSI's representations that CYI was the original owner and possessor of the Rimonim, and cited the rule that statements in a pleading are binding judicial admissions. (CJI Pre-Trial Brief at 7-8). CJI also made the same point during Opening Statements. June 1 (CJI Opening) Trial Tr. 26. *See generally Lima v. Holder*, 758 F.3d 72, 79 (1st Cir. 2014) ("A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding"). At trial, CJI confronted Dr. Mann with the numerous statements in CSI's pleadings attesting that CYI was the original owner and possessor, pointing out that based on the CSI pleadings even Dr. Mann's own client did not believe her report. (June 10 (Mann) Trial Tr. 52-53). Dr. Mann admitted on cross examination

that although she had testified at her deposition that the statements in CSI's pleading were "erroneous," she had no recollection of ever raising that point with CSI after her deposition. (*Id.* at 51). Finally, during cross examination CJI's counsel made the point that despite Dr. Mann's report, CSI never amended its pleading. (*Id.*).

On June 19, two-and-a-half years after CSI filed its original pleading, seven months after CSI served Dr. Mann's report, six months after Dr. Mann's deposition, and more than two weeks after the close of the trial, CSI filed this motion. CSI seeks leave to amend its pleading to make the indicated additions in bold and deletions as indicated by a strike through.

- "During the operation of Touro Synagogue in the 18th century, the Synagogue used Torah scrolls, including those loaned by Shearith Israel in New York. ~~These scrolls were all presumably~~ **Based on the evidence adduced at trial, some of these scrolls (not those loaned by Shearith Israel), were, by 1769,** adorned with silver finial bells, or Rimonim. Two pairs of Rimonim possessed **thereafter but not owned** by Yeshuat Israel were crafted by the silversmith Myer Myers of New York." (Counterclaims ¶ 12).

- "By 1822, Yeshuat Israel~~, original possessor of the Rimonim,~~ ceased to exist." (Counterclaims ¶ 15).

- "After 1822, the Synagogue, cemetery, and ritual items of Yeshuat Israel were left in the care of Stephen Gould, who took care of the property for several years. Thereafter, ownership of the Synagogue and real and personal property, including the Rimonim **(assuming, contrary to the proof at trial, they were at that time the property of the colonial Yeshuat Israel)**, were conveyed to Shearith Israel. For example, in 1826, Moses Lopez, then residing in New York, wrote to Stephen Gould that he "building is now considered owned at present by the Hebrew Society of this city" [i.e., Congregation Shearith Israel] and that he was "determined to send for the keys and place them in [the trustees] hands that they may do what they please with them." (Counterclaims ¶ 16).

As is clear from the proposed amendments, the statements that CSI seeks to change were not pleaded "on information and belief," as CSI incorrectly asserts. (CSI Br. 1). Rather, CSI made the statements categorically.

According to CSI's brief – no declaration or affidavit accompanied the motion – the original pleadings were "Based on information available at the time." (*Id.* at 1). CSI goes on to

- 6 -

state, in conclusory fashion, that the proposed changes are occasioned by "subsequent expert investigation." (*Id.* at 5).

Shearith Israel also seeks to amend the relief sought in its counterclaims, as follows:

- ~~"The Rimonim should be returned forthwith to the possession of Defendant in New York or to such other place as Defendant determines absent an agreement between Shearith Israel and MFA on terms satisfactory to Shearith Israel.~~ *Shearith Israel will consent to a long-term loan of the Rimonim to any congregation worshipping at the Touro Synagogue in accordance with the stipulations contained in the Indenture with Lease and will agree to continue this loan as long as an active Jewish congregation worships at Touro Synagogue in accordance with the stipulations contained in the Indenture with Lease, and subject to other terms satisfactory to Shearith Israel.*" (Counterclaims ¶ 52).

- "As a result, Jeshuat Israel**, *as a corporate entity*,** should be removed as lessee of Touro Synagogue and related real property, and as lessee of all personal property, including all religious objects, owned by Shearith Israel. *Shearith Israel does not and will not seek eviction of the individual congregants of Jeshuat Israel who seek to worship at the Touro Synagogue in accordance with the stipulations contained in the Indenture with Lease.*" (Counterclaims ¶ 63).

CSI says that it seeks these changes in the relief sought on account of CJI's supposed "misrepresentations" and "mischaracterization of Shearith Israel's position." (CSI Br. 2, 3).

## II.     ARGUMENT

### A.     Rule 15(b) Does Not Allow CSI Post-Trial to Retract Its Factual Admissions

Shearith Israel's post-trial motion for leave to amend should be denied for the simple reason that Rule 15(b) is not a vehicle to allow parties, post-trial, to retract material and factual admissions – particularly when those statements are deliberate and repeated and have stood for years and years.

Relief under Rule 15(b)(2) is narrowly circumscribed:

> ***For Issues Tried by Consent.***  When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings.  A party may move—at any time, even after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue.  But failure to amend does not affect the result of the trial of that issue.

CSI's proposed claw-back of its many admissions falls outside the scope of the Rule. The issues of ownership and possession of the Rimonim were not "issue[s] not raised by the pleadings." To the contrary, CSI explicitly pleaded the issues in its three pleadings, representing affirmatively each time that CYI was the original owner and possessor of the Rimonim. Nor were the issues of ownership and possession of the Rimonim an "unpleaded issue." Ownership and possession have been among the critical issues in this case from Day One, indeed one of the focal points of the parties' pleadings and discovery. CSI's efforts to pervert Rule 15(b) to erase its many binding admissions is definitively barred by the plain language of the Rule.

The cases cited by CSI provide no support for the unprecedented relief that CSI seeks. In every case cited by CSI for the proposition that parties may "amend . . . factual assertions" (CSI Br. 5), the moving party sought only to change minor identifications or allegations – not take back material and factual admissions on critical issues. In *Muhs v. River Rats, Inc.*, 586 F. Supp. 2d 1364, 1375 (S.D. Ga. 2008) (CSI Br. 5), for example, plaintiff had misidentified which specific alternator (port or starboard) was involved in a boat fire. In *NLRB v. Merrill*, 388 F.2d

514, 518 (10th Cir. 1968) (CSI Br. 5), plaintiff was permitted to amend its pleadings to correct the names of certain non-party companies, which only "differ[ed] somewhat" from the companies' legal names, and to correct the exact dollar amount of business alleged to have been conducted. And in *Hodgson v. Colonnades*, 472 F.2d 42, 47 (5th Cir. 1973) (CSI Br. 5), the "issue . . . was really one of mathematical computation," based on the non-movant's own records. The remaining cases cited by CSI likewise do not advance CSI's motion.[2]

Rule 15(b) is a narrow rule, not a mechanism to retract damaging factual admissions, post-trial, once a party realizes the significance of those admissions. And pleadings are not some off-hand, informal piece of paper to be discarded on a whim when in hindsight they prove hurtful to a litigant. *See* Fed. R. Civ. P. 11. On this ground alone, CSI's motion should be denied.

B.    Shearith Israel Has Not Moved "Promptly"

The Court should deny CSI's motion on a second, independent ground: CSI failed to file the motion "promptly," as required under Local Rule 15.

Under Local Rule 15, "Any motion to amend a pleading shall be made promptly after the party seeking to amend first learns the facts that form the basis for the proposed amendment." (LR cv 15). This comports with First Circuit precedent holding that a district court may deny relief under Rule 15(b) based solely on unexcused delay. *United States v. Davis*, 261 F.3d 1, 59 (1st Cir. 2001) (affirming denial of Rule 15(b) amendment; "Where the party seeking amendment of the pleadings has shown no justification for its delay in doing so, we have affirmed the trial court's ruling to deny the amendment."). *Cf. DCPB, Inc. v. Lebanon*, 957 F.2d

---

[2] Moreover, unlike here no colorable argument of prejudice to the non-moving party was presented in any of the cases cited by CSI concerning the amendment of factual assertions. In *Muhs*, 586 F. Supp. 2d at 1375, the non-moving party had "not claimed that they would be prejudiced," and the identity of the correct alternator was "beyond dispute." In *Merrill*, 399 F.2d at 519, and *Hodgson*, 472 F.2d at 48, proof with respect to the amended factual allegation was in the non-moving party's own records.

913, 917-18 (1st Cir. 1992) (denying Rule 15(b) amendment to add count to complaint; "Knowledge heightens the need for prompt action. Because DCPB was aware of the factual predicate for the tort claim throughout the litigation and failed to raise that claim until after judgment, we think it would be both unfair, and substantially prejudicial, to permit the injection of a new and different theory of liability at the very stroke of midnight.").

Here, Shearith Israel could not have been more dilatory. This is not a case in which a litigant just recently came into possession of documents that it claims necessitate a factual about face. In sharp contrast, Dr. Mann based her opinion – demonstrated at trial to be incorrect, in any event – that CSI was the original owner and possessor of the Rimonim on CSI ledgers and minutes dating back to the 1700's. These materials have been in CSI's possession for 250 years. Shearith Israel could have and should have settled on its allegations in the first place two-and-a-half years ago. The predicate for CSI's motion – that its original and amended pleadings were mistakenly "[b]ased on information available at the time" – is thus false; the relevant material has been in CSI's files all along.

The Federal Rules "place[] an affirmative duty on attorneys and litigants to make a reasonable investigation (under the circumstances) of the facts and the law before signing and submitting any pleading, motion of other paper." 2-11 *Moore's Federal Practice – Civil* § 11.11[2][a] (2015). A party is also charged with knowledge of documents in its possession. *Cf. Richardson v. Nat'l Rifle Ass'n*, 879 F.Supp. 1, 2 (D.D.C. 1995) ("Because the documents . . . were all in plaintiff's possession at the time . . . plaintiff is charged with knowledge of those facts that might have been useful to the Court's disposition"). And although there really can be no excuse here – given that CSI's pleadings have stood from the beginning of the case, during discovery and motion practice, and all through the trial – in a glaring omission CSI has not

submitted any declaration or other proof explaining (i) what factual inquiry CSI conducted at the outset of this case, (ii) why CSI delayed in discovering what it now contends, albeit mistakenly, are the true facts, and (iii) why CSI delayed in filing an amended pleading until the trial was over.

Nor did CSI move "promptly" even if delay were measured merely from the date of Dr. Mann's report. She submitted that report in November 2014. CJI's counsel examined Dr. Mann concerning the discrepancies between her report and the CSI pleading at Dr. Mann's deposition in December 2014. CJI also cited CSI's judicial admissions (i) in CJI's pre-trial brief filed on May 11, and (ii) during Opening Statements on June 1. CSI did not get around to filing this motion until June 29 – more than seven months after Dr. Mann's report, six months after her deposition, six weeks after CSI's pre-trial brief, and four weeks after Opening Statements.

Quite obviously, what drove CSI to file this motion was not the sudden discovery of purported facts, but rather CSI's realization that CSI is, under the law, bound by pleadings that turned out to be harmful to its case. *Lima*, 758 F.3d at 79. Under the Federal Rules, and particularly since CSI has given no explanation for what it now claims are material misstatements in its own pleadings, it is far too late for CSI's 180-degree turn.[3]

### C. Jeshuat Israel Will Be Prejudiced by Shearith Israel's Proposed Amendment

Finally, CSI's motion should be denied on account of the prejudice occasioned by CSI's belated amendment.

The purpose of pleadings is to frame the issues for the Court and for the parties. 5 Charles A. Wright et. al, *Federal Practice & Procedure* § 1182 (3d ed. 2015) ("[T]he function

---

[3] CSI could not be more mistaken in asserting that the amendment should be allowed because CSI at trial raised "new issues . . . without objection." (CSI Br. 4). At every turn, CJI cited CSI's pleaded representations, and used the CSI pleadings extensively to cross-examine CSI's expert.

of a pleading in federal practice is to inform the opposing party and the court of the nature of the claims and defenses being asserted by the pleader and, in the case of an affirmative pleading, the relief being demanded."). During the course of this case CJI relied on CSI's many statements attesting to CYI's original ownership and possession of the Rimonim. In light of (i) CSI's repeated statements, (ii) the unanimous conclusion by scholars that CYI was the original owner and/or possessor, (iii) pre-litigation statements by CSI's rabbi that Myer Myers made the Rimonim for the Touro Congregation, and (iv) the deposition testimony of CSI witnesses that CYI was the original owner and possessor, CJI had no expectation that CSI would attempt to take back its admissions.

Had CJI known, against all the evidence, that CSI would rescind these admissions when for two-and-a-half years CSI's operating pleadings had alleged otherwise, CJI might have litigated the case differently. For example, CJI could have conducted additional fact depositions.

As the Court of Appeals has recognized, CSI may not amend its pleadings under Rule 15(b) if that amendment will prejudice Jeshuat Israel. *See Campana v. Eller*, 755 F.2d 212, 215-16 (1st Cir. 1985) (affirming denial of Rule 15(b) amendment; finding prejudice if plaintiff were allowed to amend complaint alleging conspiracy instead to allege individual liability because "All discovery and the defense at trial centered on refuting [a conspiracy]."). On this ground as well CSI's motion should be denied.

> D.  CSI's Request to Amend the Relief It Seeks Should be Denied

CSI also seeks, post-trial, to alter the nature of the relief it seeks. Here too, CSI's tardy request should be denied.

CSI apparently seeks to ameliorate the harsh impact of its pending requests to (i) evict CJI from Touro Synagogue, and (ii) obtain the return of the Rimonim to CSI in New York "forthwith." As CJI noted in its post-trial submissions, this relief conflicts sharply with CSI's

duties as trustee – yet another ground among many others why CSI is unqualified to continue in that capacity.

CSI's proposed amendment underscores the need to remove CSI, for the relief CSI proposes to seek now is actually harsher than that requested at trial. There, CSI said that it sought to evict not the congregants, but "only" the Congregation – whom the Attorney General has concluded is the current beneficiary of the Touro Synagogue Trust. (Dkt. 95 at 10). Putting aside CSI's Orwellian formulation, CSI now says that it will evict CJI as lessee and not evict congregants, but only if those congregants "worship at Touro Synagogue in accordance with stipulations contained in the indenture with Lease," referencing Spanish-Portuguese rite. (CSI Br. 2). In other words, CSI will evict the Congregation, and on top of that evict congregants too, if they do not pass a religious litmus test as CSI subjectively interprets it. That is unfair, offensive, barred by the Establishment Clause, *see Presbyterian Church in the United States v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church*, 393 U.S. 440 (1969) – and comes too late in the day, at the thirteenth hour.

Moreover, CSI's proposed amendment with respect to the relief sought does not conform to the evidence that CSI presented at trial. There, CSI offered Exhibit D458, a February 28, 2014 letter from CSI stating, "We are not seeking eviction of the congregants; in fact we see no present dispute with the congregants at all. . . . the dispute is with CJI and CJI's conduct." Thus, there was no evidence at trial that conditioned the non-eviction of the congregants upon their meeting the subjective religious litmus test now being proposed.

CSI also seeks to impose the same conditions on any agreement to keep the Rimonim at Touro Synagogue – only so long as the Congregation prays according to the way that CSI subjectively likes. Quite starkly, and in light of its emboldened and offensive requests, CSI

- 14 -

continues to prove its unworthiness as trustee at every turn – for a trust whose very existence CSI denies, yet which the Attorney General has concluded was established by "the overwhelming record at trial."  (Dkt. 95 at 7).

## **Conclusion**

For these reasons, the Court should deny CSI's motion.

          CONGREGATION JESHUAT ISRAEL,

          By Its Attorneys,

          PARTRIDGE SNOW & HAHN LLP

          */s/ Steven E. Snow*
          Steven E. Snow (#1774)
          40 Westminster Street, Suite 1100
          Providence, RI  02903
          (401) 861-8200 / (401) 861-8210 FAX
          ses@psh.com

          KRAMER LEVIN NAFTALIS & FRANKEL LLP

          */s/ Gary P. Naftalis*
          Gary P. Naftalis (admitted *pro hac vice*)
          Jonathan M. Wagner (admitted *pro hac vice*)
          Tobias B. Jacoby (admitted *pro hac vice*)
          Daniel P. Schumeister (admitted *pro hac vice*)
          1177 Avenue of the Americas
          New York, NY  10036
          (212) 715-9253 / (212) 715-9238 FAX
          gnaftalis@kramerlevin.com
          jwagner@kramerlevin.com
          tjacoby@kramerlevin.com
          dschumeister@kramerlevin.com

DATED:  July 16, 2015

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day of July, 2015, I caused a true copy of the within document to be delivered through the ECF system to all counsel of record.

/s/ Gary P. Naftalis

- 16 -